**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

*In re*:

NEW BLUE FLOWERS GOURMET CORP.,

Debtor.

Chapter 7

Case No. 23-11231 (JPM)

ALBERT TOGUT, Not Individually But Solely In His Capacity as Chapter 7 Trustee of New Blue Flowers Gourmet Corp.,

Plaintiff,

v.

BYUNG (BRUCE) LIM; MUN SOOK LIM; 405 WEST 23RD STREET BAKERY CORP.; KATSU-HAMA USA, LLC; GIO ESTRADA CONSTRUCTION LLC; JAMES YU; and FISCHER FOODS OF NEW YORK, INC.,

Defendants.

Adv. Proc. No. 25-01115 (JPM)

# MEMORANDUM OPINION AND ORDER GRANTING THE LIMS' MOTION TO VACATE ENTRIES OF DEFAULT AND GRANTING 405 WEST BAKERY'S MOTION TO VACATE DEFAULT JUDGMENT

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I. INTRODUCTION

This adversary proceeding arises from the Chapter 7 case of New Blue Flowers Gourmet Corp. (the "**Debtor**"). On July 17, 2025, Albert Togut, solely in his capacity as Chapter 7 trustee of the Debtor's estate (the "**Trustee**"), commenced this proceeding by filing a complaint (the "**Complaint**") to avoid and recover allegedly fraudulent, preferential, and unauthorized postpetition transfers made by the Debtor to or for the benefit of the defendants. (*See* Compl., Dkt. No. 1, ¶¶ 4-7).

On November 25, 2025, the Clerk of Court entered certificates of default against 405 West 23rd Bakery Corp. ("**405 West Bakery**"), Byung (Bruce) Lim ("**Mr. Lim**"), and Mun Sook Lim ("**Mrs. Lim**" and, together with Mr. Lim, the "**Lims**"), among other defendants, following their failure to timely answer or otherwise respond to the Complaint. (Dkt. Nos. 19-24). The Lims, proceeding *pro se*, filed an answer the following day, although their answer was not docketed until December 16, 2025. (Dkt. Nos. 35, 67).

On December 30, 2025, the Trustee moved for entry of default judgments against 405 West Bakery and three other defendants, but not the Lims. (Dkt. No. 36). By order dated February 11, 2026, the Court granted the motion as to 405 West Bakery, Katsu-Hama USA, LLC ("**Katsu-Hama**"), and Gio Estrada Construction LLC ("**Gio Estrada**"). (Dkt. No. 48). On February 18, 2026, the Clerk of Court entered a default judgment consistent with the Court's order (the "**Default Judgment**"), awarding $727,523.93 against 405 West Bakery, $27,330.21 against Katsu-Hama, and $32,500.00 against Gio Estrada. (Dkt. No. 49). No default judgment was entered against either of the Lims.

Before the Court are two motions filed on June 29, 2026: (1) 405 West Bakery's motion to vacate its default and the Default Judgment entered against it, and (2) the Lims' motion to vacate their defaults (collectively, the "**Motions to Vacate**" or "**Motions**"). (Dkt. Nos. 61-62). Although the Lims characterize their Motion as seeking relief from a default judgement, their Motion concerns the Clerk's entries of default against them. The Trustee opposes both Motions. (Dkt. No. 67). The Court held a hearing on August 19, 2026, to consider the relief requested by the Motions.

For the reasons set forth below, the Court **GRANTS** both Motions to Vacate. The Court sets aside the entries of default against the Lims and 405 West Bakery, and vacates the February 11, 2026 order and the Default Judgment solely insofar as they grant monetary judgment against 405 West Bakery.

## II. BACKGROUND

### A. The Parties and the Main Bankruptcy Case

The Debtor is a New York corporation that operates a café known as Café Alice at 5 East 47th Street in Manhattan, New York. Mr. Lim served as the Debtor's general manager and signed its bankruptcy petition. His spouse, Mrs. Lim, owned all of the Debtor's shares and served as both the Debtor's president and its secretary. (*See* Compl., Dkt. No. 1, ¶¶ 8-14).

The Lims also owned and controlled two affiliated businesses: 405 West Bakery, which runs Chelsea Pantry Café at 405 West 23rd Street in Manhattan, and Katsu-Hama, which operates a restaurant at 11 East 47th Street in Manhattan. The Trustee alleges that the Lims collectively owned all of the equity of both entities, that Mr. Lim incorporated and served as president of 405 West Bakery, and that 405 West Bakery and Katsu-Hama were affiliates and insiders of the Debtor. (*See* Compl., Dkt. No. 1, ¶¶ 15-22). In his declaration supporting 405 West Bakery's Motion to

Vacate, Mr. Lim identifies himself as that entity's chief executive officer. (*See* Lim Decl., Dkt. No. 61, ¶ 1).

The remaining defendants in this Adversary Proceeding are subsequent transferees of funds initially transferred to 405 West Bakery. Specifically, the Adversary Complaint alleges that Gio Estrada and James Yu ("**Mr. Yu**") provided construction-related services to 405 West Bakery, and that Fischer Foods of New York, Inc. ("**Fischer Foods**") supplied food products to 405 West Bakery. The Trustee asserts that these services and products benefited 405 West Bakery rather than the Debtor. (*See* Compl., Dkt. No. 1, ¶¶ 4-5, 23-25).

On August 1, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V. The Complaint states that the Debtor commenced its bankruptcy case to stay an eviction sought by its landlord, Walsam 47th Street, LLC. (*See* Compl., Dkt. No. 1, ¶¶ 3, 31). On October 23, 2023, the Court entered an order confirming that the automatic stay did not prevent the landlord from proceeding with the eviction, and the Debtor was subsequently evicted on December 12, 2023. (*Id*. ¶¶ 33-37). On December 18, 2023, the Court converted the case to Chapter 7. Albert Togut was appointed as the Chapter 7 Trustee. (*Id*. ¶¶ 39-40).

### B. The Adversary Proceeding and the Defaults

On July 17, 2025, the Trustee commenced this adversary proceeding. (Dkt. No. 1). The Trustee alleges that, before and after the Petition Date, the Debtor transferred not less than $2,797,175 directly or indirectly to or for the benefit of the defendants. The Trustee further alleges that the Debtor was insolvent at the relevant times and "did not receive consideration in exchange for" the challenged transfers. (*See* Compl. ¶¶ 4-6; Dkt. No. 15 ¶ 14).

The Complaint asserts five counts seeking avoidance and recovery of actually fraudulent transfers, constructively fraudulent transfers, ninety-day preferential transfers, insider preferential

transfers, and unauthorized postpetition transfers. (*See* Compl. ¶¶ 71-105). The preference claims are pleaded in the alternative, subject to proof that the challenged transfers were made on account of antecedent debts. The Trustee also seeks preservation of avoided transfers for the estate and disallowance of defendants' claims pending repayment. (*See* Compl. ¶¶ 78, 89, 92, 94, 97-98, 105).

As relevant here, the Trustee identifies $727,523.93 in transfers allegedly made to or for the benefit of 405 West Bakery and $1,920,478.61 in transfers identified as having been made to or for the benefit of the Lims. (Dkt. No. 36 ¶ 10). The alleged transfers benefiting the Lims include cash withdrawals, electronic funds transfers, transfers to unidentified bank accounts, a postpetition transfer of equipment, and payments relating to purported shareholder loans. (*See* Compl. ¶ 69). The Complaint also seeks recovery of unaccounted-for cash and online sales proceeds in an amount to be determined at trial. (*See* Compl. ¶¶ 53-56, 69).

The Clerk of Court issued a summons on July 21, 2025. (Dkt. No. 3). The summons required the defendants to answer or otherwise respond to the Complaint within thirty days, making their responses due on August 20, 2025. (*Id*. at 1; *see also* Dkt. No. 36, at 5 n.1). Copies of the summons and Complaint were served on July 22 and July 24, 2025, as reflected in the affidavits of service filed at Docket Numbers 4 and 5. (*See* Dkt. No. 15, ¶¶ 15-17; *see also* Dkt. No. 36 ¶¶ 11-13).

On October 7, 2025, the Trustee mailed letters to the Lims, 405 West Bakery, Katsu-Hama, Gio Estrada, and Mr. Yu advising them that their time to respond to the Complaint had expired. (*See* Dkt. No. 15, ¶ 19). The letters further advised that, absent an answer or written response within seven days, the Trustee intended to request certificates of default. (*Id.*). On November 6, 2025, the Trustee filed his request for entry of default against those defendants. (*See* Dkt. No. 15;

*see also* Dkt. No. 67, ¶ 6). On November 25, 2025, the Clerk of Court entered certificates of default against Mr. Lim, Mrs. Lim, 405 West Bakery, Katsu-Hama, Gio Estrada, and Mr. Yu at Docket Numbers 19 through 24, respectively. (*See* Dkt. No. 67, ¶¶ 6-7; *see also* Dkt. No. 36, ¶¶ 1, 18).

Fischer Foods, which had obtained extensions of its time to respond, filed an answer on November 24, 2025. (Dkt. No. 15, ¶ 18; Dkt. No. 36, ¶ 17). The Lims, proceeding *pro se*, filed an answer on November 26, 2025, one day after the entry of their defaults. (Dkt. No. 36, ¶¶ 17-19). Their answer was not docketed until December 16, 2025, when it appeared at Docket Number 35. (*See* Dkt. No. 67, ¶ 8).

**C. THE DEFAULT JUDGMENT**

On December 30, 2025, the Trustee moved for entry of default judgments against 405 West Bakery, Katsu-Hama, Gio Estrada, and Mr. Yu. The motion did not seek default judgments against the Lims. (*See* Dkt. No. 36; *see also* Dkt. No. 67, ¶ 9). The Trustee requested the amounts allegedly recoverable from each of the four defendants, together with filing fees and prejudgment and post-judgment interest. (*See* Dkt. No. 36 ¶¶ 21-25).

On January 21, 2026, Mr. Yu filed an answer asserting mistaken identity. (Dkt. No. 44). He denied being the individual identified in the Complaint as having received $45,000 from 405 West Bakery and denied having performed the construction-related services alleged in the Complaint. (*Id*. at 7-8). The Court's subsequent order expressly recognized that Mr. Yu had answered and was no longer subject to the default-judgment motion. (Dkt. No. 48 at 2).

By order dated February 11, 2026, the Court granted the Trustee's motion as to 405 West Bakery, Gio Estrada, and Katsu-Hama. The order awarded $727,523.93 against 405 West Bakery, $32,500.00 against Gio Estrada, and $27,330.21 against Katsu-Hama, together with $350 in filing

fees for which those defendants were jointly and severally liable. The order also awarded prejudgment and post-judgment interest as specified therein. (Dkt. No. 48 at 2-3). On February 18, 2026, the Clerk of Court entered a default judgment consistent with the Court's February 11, 2026 order. (Dkt. No. 49). Neither the February 11, 2026 order nor the Default Judgment awarded relief against the Lims. (*See* Dkt. No. 48, at 2-3; Dkt. No. 49).

### D. The Motions to Vacate and the Parties' Positions

On June 29, 2026, 405 West Bakery and the Lims, now represented by counsel, filed separate motions seeking to vacate their defaults. (Dkt. Nos. 61-62; Dkt. No. 67 ¶ 11). Both Motions to Vacate invoke Federal Rule of Civil Procedure 60 and rely on declarations of Mr. Lim dated May 15, 2026. Each motion includes a proposed answer to the Complaint. (*See* Dkt. No. 61, Lim Decl. ¶¶ 4, 13; *see also* Dkt. No. 62, Lim Decl. ¶¶ 4, 15).

#### 1. The Moving Defendants' Positions

Mr. Lim attributes the defaults in part to his misunderstanding of the consequences of failing to respond to a complaint served by mail. In both declarations, he states: "I was mistaken in the consequences which would result if I did not respond to the complaint in a timely manner." (Dkt. No. 61, Lim Decl. ¶ 5; Dkt. No. 62, Lim Decl. ¶ 5).

Mr. Lim also relies on Mrs. Lim's medical condition and his responsibilities in caring for her. In support of 405 West Bakery's motion, he states that his wife "has been ill and is suffering from dementia," and explains: "That fact and her care has taken my focus away from business matters." (Dkt. No. 61, Lim Decl. ¶¶ 6-7). In support of the Lims' motion, he further states that Mrs. Lim is unable to defend herself and that, when she was served by mail with notice of this proceeding, "she was unable to understand the nature or importance of the proceeding." He states that she is undergoing medical treatment for her condition. (Dkt. No. 62, Lim Decl. ¶¶ 7-9).

Mr. Lim further states that the attorney he sought to retain was initially "not available since he had been suffering from some health problems," which caused additional delay in responding to the Complaint. He states that the attorney is now available. Both declarations characterize the delay in the same terms: "The delay was not deliberate and was inadvertent." (Dkt. No. 61, Lim Decl. ¶¶ 8-10; Dkt. No. 62, Lim Decl. ¶¶ 10-12).

As to the merits, Mr. Lim asserts that the challenged transfers "are in fact the proceeds from the federal loan which was entered into to support the various companies and their business operations." (Dkt. No. 61, Lim Decl. ¶ 12; Dkt. No. 62, Lim Decl. ¶ 14). On that basis, he states his belief that the moving defendants have a meritorious defense. (Dkt. No. 61, Lim Decl. ¶¶ 11-12; Dkt. No. 62, Lim Decl. ¶¶ 13-14). Their proposed answers deny, among other things, the allegations concerning the challenged transfers, the Debtor's insolvency, and the absence of consideration or reasonably equivalent value. (Dkt. Nos. 61-62, proposed answers ¶¶ 68-78, 85, 88).

**2. The Trustee's Position**

In an omnibus response dated August 12, 2026, the Trustee opposes both Motions to Vacate (the "**Response**"). (Dkt. No. 67). The Trustee argues that the Lims' motion should be denied as moot "[b]ecause the Lims are not subject to the Default Judgment." (*Id.* ¶ 10 n.3). As to 405 West Bakery, the Trustee contends that the Motion "is not supported by legal argument" and that Mr. Lim's factual assertions do not provide a sufficient evidentiary basis for vacating the Default Judgment. (*Id.* ¶ 14).

First, the Trustee argues that 405 West Bakery's default was willful. The Trustee maintains that Mr. Lim's filing of an answer on behalf of himself and Mrs. Lim demonstrates that Mr. Lim understood the need to respond to the Complaint. According to the Trustee, the request for entry

of default alerted the Lims to the Trustee's intention to seek default judgments, and the Lims answered only after that request had been filed and served. The Trustee contends that 405 West Bakery, acting through Mr. Lim as its chief executive officer, therefore knew that a response was required. He concludes that its failure to answer was "knowing and deliberate." (Dkt. No. 67, ¶¶ 18-22).

The Trustee also challenges the sufficiency of Mr. Lim's explanations concerning Mrs. Lim's condition and counsel's health problems. He characterizes those explanations as "vaguely referencing the health issues of [Mrs. Lim] and his unidentified attorney," and argues that 405 West Bakery failed to explain, with supporting evidence, why another attorney could not have prepared and filed an answer. (*Id*. ¶¶ 23, 25). The Trustee emphasizes that the motion was filed more than four months after entry of the Default Judgment and nearly a year after commencement of this proceeding. The Trustee maintains that the delay was unreasonable and was either willful or sufficiently negligent to preclude relief. (*Id*. ¶¶ 11, 24-25).

Second, the Trustee argues that 405 West Bakery has not presented a meritorious defense. The Trustee observes that its proposed answer "asserts no affirmative defenses and only pleads general denials." (*Id*. ¶ 27). The Trustee interprets Mr. Lim's reference to federal loan proceeds as asserting that funds originating as loan proceeds cannot constitute an interest of the Debtor in property. The Trustee rejects that position, relying on authority treating loan proceeds held by a debtor as the debtor's property. The Trustee argues that, even if 405 West Bakery proved that the challenged transfers derived from loan proceeds received by the Debtor, "it would only be proving an element of the Trustee's claims against it." (*Id*. ¶¶ 27-28).

Finally, the Trustee acknowledges that vacating the Default Judgment against 405 West Bakery would not cause significant prejudice apart from the costs and delays associated with

responding to its motion. The Trustee nevertheless maintains that "the willfulness and meritorious defense factors weigh heavily in his favor" and that, considered together, the relevant factors do not warrant relief under Rule 60(b)(1). (*Id.* ¶ 29). The Trustee therefore requests denial of both Motions to Vacate with prejudice. (*Id.* at 9).

## III. LEGAL STANDARD

### A. Setting Aside an Entry of Default Under Rule 55

Federal Rule of Civil Procedure 55, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7055, distinguishes between an entry of default and a final default judgment. *See In re Fyre Festival LLC*, 611 B.R. 735, 739 (Bankr. S.D.N.Y. 2020) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)) (explaining that Rule 55 "provides a 'two-step process' for the entry of a judgment against a party that fails to defend: first, the entry of a default, and second, the entry of a default judgment"). Under Rule 55(c), a "court may set aside an entry of default for good cause." *Drip Cap., Inc. v. Big Stock, Inc.*, No. 24-CV-2755 (CM), 2025 WL 2662271, at *1 (S.D.N.Y. Sept. 16, 2025) (citing Fed. R. Civ. P. 55(c)). Rule 60(b), by contrast, governs relief from a final default judgment. *See id.*

Although the Lims invoke Rule 60(b)(1) and refer to a default judgment against them, the relief they seek concerns the Clerk's entries of default at Docket Numbers 19 and 20. The Trustee did not seek default judgments against the Lims, and neither the Court's February 11, 2026 order nor the February 18, 2026 Default Judgment entered judgment against the Lims. Therefore, the Court construes their motion as seeking relief from entries of default under Rule 55(c). (Dkt. No. 62, Lim Decl. ¶¶ 3-4; Response, Dkt. No. 67, ¶¶ 7-10 & n.3).

"[W]hen determining whether there is good cause to vacate an entry of default," courts in the Second Circuit consider three factors: "(1) whether the default was willful; (2) whether setting

aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Alizada v. Talibov*, No. 1:23-CV-05484-CM-OTW, 2024 WL 3676584, at *3 (S.D.N.Y. Aug. 6, 2024) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Courts also consider "whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96. In conducting the three factor test, "courts must take note of the Second Circuit's preference to resolve disputes on the merits." *Alizada*, 2024 WL 3676584, at *3 (citing *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-4650 (ER), 2023 WL 4288154, at *5 (S.D.N.Y. June 30, 2023)). "Accordingly, the 'good cause' standard should be liberally construed; 'when doubts exist as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.'" *Alizada*, 2024 WL 3676584, at *3 (quoting *Enron*, 10 F.3d at 96).

"[T]he factors should be considered together" rather than in isolation. *West Coast 2014-7, LLC v. Chandipersaud*, No. 21-CV-4314 (EK)(SIL), 2022 WL 19331245, at *4 (E.D.N.Y. Nov. 28, 2022) (citing *C.B. v. New York City Dep't of Educ.*, No. 18-cv-7337, 2019 WL 3162177, at *5 (S.D.N.Y. Jul. 2, 2019)). Although "willfulness is the most significant factor," no single factor is dispositive. *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024); *see also Gillette v. Trabout*, No. 9:24-CV-01398 (BKS/ML), 2026 WL 1791404, at *1 (N.D.N.Y. June 23, 2026) (quoting *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024)) ("Willfulness 'is the most significant factor' but is not dispositive."). The Court must therefore evaluate the explanations for the default, the substance of the asserted defenses, and the consequences of reopening the litigation in light of the procedural posture of each moving defendant. *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 CIV. 5620 (JFK), 2002 WL 562650, at *4 (S.D.N.Y. Apr. 15, 2002).

### B. RELIEF FROM A FINAL DEFAULT JUDGMENT UNDER RULE 60

Rule 60 applies in bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024. *See* Fed. R. Bankr. P. 9024; *see also In re Wilson*, No. 22-30158 (AMN), 2024 WL 169171, at *3 (Bankr. D. Conn. Jan. 10, 2024). Whereas Rule 55(c) permits a court to set aside an entry of default for good cause, relief from a final default judgment is governed by Rule 60(b). *See* Fed. R. Civ. P. 55(c); *see also* Fed. R. Civ. P. 60(b).

Unlike the Lims, 405 West Bakery seeks relief from a monetary judgment entered against it pursuant to the Court's February 11, 2026 order and the Clerk's February 18, 2026 Default Judgment. (Dkt. Nos. 48-49). Both 405 West Bakery and the Trustee address that request under Rule 60(b)(1). (Dkt. No. 61, Lim Decl. ¶ 4; Response, Dkt. No. 67, ¶¶ 13-16). Because the Default Judgment is final, the Court evaluates whether 405 West Bakery satisfies the more demanding requirements of Rule 60(b).

Rule 60(b) identifies six grounds for relief from a final judgment or order. *See* Fed. R. Civ. P. 60(b). As relevant here, subsection (b)(1) permits relief for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A motion made under that subsection must be made within a reasonable time and, in all events, no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The one-year limitation "is an absolute, outside limit," and not a determination that every motion filed within that period is timely. *In re Clinton St. Food Corp.*, 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000). "What is reasonable will vary from case to case and depends on, among other things, whether the adverse party has been prejudiced and 'whether the moving party has some good reason for his failure to take appropriate action sooner.'" *Gouldbourne v. J.F. Jelenko & Co.*, No. 98 CIV. 7243 (LAK), 2000 WL 546762, at *1 (S.D.N.Y.

Jan. 13, 2000) (quoting 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2866, at 382-83 (2d ed. 1995)).

The "excusable neglect" inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission[.]" *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 445 n.10 (S.D.N.Y. 2016). Those circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on the movant, and whether the movant acted in good faith." *In re Tronox Inc.*, No. 09-10156 (ALG), 2014 WL 5801058, at *1 (Bankr. S.D.N.Y. Nov. 7, 2014) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs, Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

"The party seeking relief under [Rule] 60(b) bears the burden of proof." *In re K.G. IM, LLC*, 620 B.R. 469, 478 (Bankr. S.D.N.Y. 2020) (citing *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)). In assessing the evidentiary sufficiency for Rule 60(b) relief, courts typically require "highly convincing" evidence, a showing of "good cause for the failure to act sooner," and the absence of "undue hardship … on the other parties." *In re 45 John Lofts, LLC*, 648 B.R. 16, 24 (Bankr. S.D.N.Y. 2023). In the default judgment context, "[t]he court's determination under Rule 60(b)(1) is guided by the same three principal factors: willfulness, the existence of a meritorious defense, and prejudice to the non-defaulting party." *Reisman v. Northeastern Power & Gas LLC*, 720 F. Supp. 3d 279, 288 (S.D.N.Y. 2024). Although the same factors apply, the inquiry under Rule 60(b) is more demanding than that of Rule 55(c) given the Court's "interest in preserving the finality of judgments." *Progressive Cas. Ins. Co. v. Liberty Mut. Ins. Co.*, No. 91 CIV. 2477-SWK-LB, 1996 WL 524339, at *4 (S.D.N.Y. Sept. 13, 1996); *see also Reisman*, 720 F. Supp. 3d at 288 (citing *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005)) (explaining that "the standard under Rule 55(c) is more 'forgiving' than under Rule 60(b)").

## IV. ANALYSIS

### A. The Lims' Motion to Vacate Entries of Default

As an initial matter, the Court rejects the Trustee's argument that the Lims' Motion to Vacate is moot because no default judgment was entered against them. (*See* Response, Dkt. No. 67, ¶ 10 n.3). Although the Trustee did not seek default judgment against the Lims, the Clerk of Court entered defaults against them at Docket Numbers 19 and 20. (Dkt. Nos. 19-20). While the Lims styled their Motion as a motion for relief under Rule 60(b), the Court construes that Motion as a request to set aside the entries of default under Rule 55(c). Therefore, the Court assesses the Lims' Motion under the three factors articulated by *Enron*: willfulness, prejudice, and meritorious defense. *See Enron*, 10 F.3d at 96.

#### 1. Willfulness

Willfulness requires "a default … that is more than merely negligent or careless." *Hartford Fire Ins. Co. v. The Evergreen Org., Inc.*, 410 F. Supp. 2d 180, 185 (S.D.N.Y. 2006) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). A willful default may be found, for example, "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *McNulty*, 137 F.3d at 738; *see also Gonzalez v. City of New York*, 104 F. Supp. 2d 193, 196 (S.D.N.Y. 2000); *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 109 (E.D.N.Y. 2014) ("[A] good faith belief that the matter would be settled without judicial intervention may preclude a finding of willfulness.").

Willfulness may also be found where "a defaulting party has acted in bad faith or has 'made a strategic decision to default.'" *Argent v. Off. of Pers. Mgmt. of U.S.*, No. 96 CIV. 2516 (PKL), 1997 WL 278115, at *2 (S.D.N.Y. May 22, 1997) (quoting *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996)). At the same time, "the degree of negligence in precipitating

a default is a relevant factor to be considered, and gross negligence weighs against the defaulting party, though it does not preclude relief." *Argent*, 1997 WL 278115, at *2 (citing *American Alliance*, 92 F.3d at 60) (internal quotations omitted).

Here, the Court finds that the circumstances surrounding the Lims' defaults weigh in favor of relief under Rule 55(c). In reaching that conclusion, the Court considers both the explanations offered for the delay and the Lims' conduct after the response deadline passed.

There is no dispute that the Lims' delay was substantial. Their answer was due on August 20, 2025, but they did not file it until November 26, 2025—ninety-eight days after the deadline had expired. (*See* Dkt. No. 36, ¶ 19). The summons issued by the Clerk of Court expressly warned that a default judgment could follow from a failure to respond, and the Trustee later sent a letter advising that the response deadline had lapsed. (Dkt. No. 15, ¶ 19, Ex. 1). Both notices adequately informed the Lims of the consequences of failing to respond. Accordingly, Mr. Lim's assertion that he misunderstood the consequences of failing to respond to a complaint served by mail does not, standing alone, satisfactorily explain the delay.

Nonetheless, the Court finds that the Lims' defaults were not willful when viewed in light of the totality of the circumstances. Mr. Lim states under penalty of perjury that Mrs. Lim suffers from dementia and that, when she was served, "she was unable to understand the nature or importance of the proceeding." (Dkt. No. 62, Lim Decl. ¶¶ 7-9). Mr. Lim further explains that Mrs. Lim's condition and his responsibilities in caring for her diverted his attention from business matters. (Dkt. No. 61, Lim Decl. ¶¶ 6-7). Mr. Lim also represents that the attorney he sought to retain was initially unavailable because of health problems, which caused additional delay in responding to the Complaint. He characterizes the delay as "not deliberate" and "inadvertent." (Dkt. No. 62, Lim Decl. ¶¶ 10-12). Although that explanation would have benefited from greater

specificity, including the identity of the attorney and a more detailed chronology of the events, the Court finds that Mr. Lim's explanations provide sufficient facts to reasonably infer that the Lims did not willfully disregard the deadline.

The Lims' subsequent filing also weighs against treating their defaults as a "deliberate" or "strategic decision to default." *See Argent*, 1997 WL 278115, at *2; *see also American Alliance*, 92 F.3d at 60. The Lims filed their answer *pro se* on November 26, 2025, one day after the Clerk of Court entered their defaults and before the Trustee sought default judgments against the other defendants. (*See* Response, Dkt. No. 67, ¶¶ 7-9). Although the Lims' answer was untimely, the Lims' prompt filing after entry of default weighs against characterizing the Lims' conduct as a "deliberate" or "strategic decision to default." *See Argent*, 1997 WL 278115, at *2; *see also American Alliance*, 92 F.3d at 60. Their then-*pro se* status likewise warrants consideration in applying Rule 55(c). *See Enron*, 10 F.3d at 96.

On balance, the Court finds that the Lims' defaults resulted from neglect under difficult personal circumstances rather than a deliberate choice to abandon their defense. Their procedural failures were significant, but the record does not demonstrate bad faith, egregious conduct, or a strategic decision to default. The willfulness factor therefore weighs in favor of setting aside the entries of default.

**2. Prejudice**

"Prejudice requires a showing of more than 'delay alone'; instead, the delay must have caused the loss of evidence, created increased difficulties in discovery, or provided increased opportunity for fraud and collusion." *Johnson v. New Bern Transp. Corp*., No. 18-CV-01232-LJV, 2020 WL 6736861, at *2 (W.D.N.Y. Nov. 17, 2020) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "The cost, burden and pressure associated with litigation is a fact of pursuing any

litigation and does not suffice to show prejudice simply because a plaintiff will have to prove his case on the merits." *Moore v. Caledonia Cent. Supervisory Union*, No. 1:11-CV-276-JGM, 2012 WL 4815529, at *1 (D. Vt. Oct. 10, 2012).

Here, the Court finds that the prejudice factor weighs strongly in favor of Rule 55(c) relief. The Trustee does not identify any concrete prejudice that would result from setting aside the entries of default against the Lims. Rather, his objection to the Lims' Motion rests on the contention that the Motion is moot because no Default Judgment was entered against them. (*See* Response, Dkt. No. 67, ¶ 10). As previously explained, the Court rejects the Trustee's argument of mootness because the lack of a final default judgment against the Lims does not preclude the Court from setting aside the Clerk's entries of default against them. (*See supra* Analysis, Section A).

To the extent granting Rule 55(c) relief would increase litigation costs and prolong the final resolution of the claims at issue, the Court finds that such consequences do not constitute the type of prejudice that would preclude Rule 55(c) relief. As *Moore* explains, ordinary costs, burdens, and pressures associated with litigation do not suffice to show prejudice. *See Moore*, 2012 WL 4815529, at *1. Nor does the Trustee identify any loss of evidence, increased difficulty in discovery, or heightened opportunity for fraud or collusion resulting from the Lims' delay. Accordingly, the Court finds that the ordinary costs and delay associated with litigating the Trustee's claims against the Lims on the merits do not establish cognizable prejudice, and this factor weighs in favor of vacatur.

**3. Meritorious Defense**

"[A] party seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Golden Loop, LLC v. Live Nation Ent., Inc.*, No. 25-CV-2469 (LJL), 2026 WL 1192539, at *4 (S.D.N.Y. May 1, 2026). "A party's defense may be

deemed meritorious for default purposes if the defense raises a significant issue; a party need not establish the merits of the defense conclusively." *Id*. (quoting *Artmatic USA Cosmetics v. Maybelline Co*., 906 F. Supp. 850, 855 (E.D.N.Y. 1995)); *see also Davis*, 713 F.2d at 916 (finding that a meritorious defense is one that "justif[ies] further briefing and consideration" by the trial judge). "Likelihood of success is not the measure." *Golden Loop*, 2026 WL 1192539, at *4. A meritorious defense exists, for purposes of setting aside an entry of default, if the allegations "contain 'even a hint of suggestion' which, if proven at trial, would constitute a complete defense." *Golden Loop*, 2026 WL 1192539, at *4 (quoting *Weisel v. Pichel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000)).

The Court finds that the Lims have satisfied the relatively modest burden of presenting a meritorious defense. Mr. Lim states under penalty of perjury that the funds challenged by the Trustee "are in fact the proceeds from the federal loan which was entered into to support the various companies and their business operations." (Dkt. No. 62, Lim Decl. ¶ 14). In response, the Trustee argues that this showing is insufficient because loan proceeds held by the Debtor constitute property of the Debtor and therefore remain subject to avoidance. (*See* Response, Dkt. No. 67, ¶¶ 27-28).

The Court agrees with the Trustee that the mere fact that funds originated from a federal loan would not remove those funds from the property of the Debtor's estate or render subsequent transfers immune from avoidance. *See In re Sprint Mortg. Bankers Corp*., 177 B.R. 4, 6 (E.D.N.Y. 1995) ("It is well established that loan proceeds held by the debtor are property of the estate."). However, the Lims' position is not that those funds are categorically immune from avoidance. Although the Lims do not articulate a formal affirmative defense, the Court finds that Mr. Lim's sworn statement raises a "significant issue" as to whether the challenged transfers conferred an

indirect economic benefit on the Debtor and, consequently, whether the Debtor received reasonably equivalent value in exchange for those transfers. *See Golden Loop*, 2026 WL 1192539, at *4. Mr. Lim's declaration asserts that the challenged transactions occurred in connection with financing intended to support the operations of the Debtor and its affiliated businesses. (Dkt. No. 61, Lim Decl. ¶ 12; Dkt. No. 62, Lim Decl. ¶ 14). The Complaint itself acknowledges that the Debtor obtained federal financing, including a $200,000 Small Business Administration loan and an Economic Injury Disaster Loan that was later increased to $500,000. (*See* Compl. ¶¶ 64-65).

That factual assertion could bear directly on material elements of the Trustee's fraudulent conveyance claims. With respect to constructive fraudulent conveyance, the Trustee alleges that the Debtor received no benefit and no reasonably equivalent value from the challenged prepetition transfers. (*See* Compl. ¶¶ 74, 80-82). *See PowX Inc. v. Performance Sols., LLC*, No. 24-CV-01389 (MMG), 2026 WL 592251, at *8 (S.D.N.Y. Mar. 3, 2026) ("A transfer made 'with actual intent to defraud' any creditor is an 'actual fraudulent conveyance' whereas a transfer made 'without receiving a reasonably equivalent value' in exchange for the transfer is a 'constructive fraudulent conveyance.'"). But the Second Circuit has recognized that "[a] debtor can receive 'fair consideration' indirectly through a benefit conferred on a third party provided that 'the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.'" *Kim v. Ji Sung Yoo*, No. 15 CIV. 3110, 2017 WL 4382078, at *5 (S.D.N.Y. Sept. 29, 2017) (citing *Rubin v. Mfrs. Hanover Tr. Co.*, 661 F.2d 979, 991-92 (2d Cir. 1981)). Thus, if the Lims establish that the transactions formed part of a legitimate financing arrangement that conferred economic value upon the Debtor, that showing could undermine the Trustee's constructive fraudulent transfer theory. *See Rubin*, 661 F.2d at 991-92.

As to the Trustee's actual fraudulent conveyance claim, Mr. Lim's assertion concerning the operational purpose of the alleged transfers could likewise bear on the Debtor's intent. *See In re Tribune Co. Fraudulent Conveyance Litig*., 946 F.3d 66, 73 (2d Cir. 2019) (quoting 11 U.S.C. § 548(a)(1)(A)) (explaining that an "intentional fraudulent conveyance" requires a showing of "actual intent to hinder, delay, or defraud a creditor"). Actual intent is ordinarily assessed from the circumstances surrounding the transfer, including whether the transaction was unusual or outside the ordinary course. *See In re Sharp Int'l Corp*., 403 F.3d 43, 56 (2d Cir. 2005) ("Actual fraudulent intent ... may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction.").

The same factual issue could also bear on the Trustee's alternative preference theory. Section 547(b)(2) requires that a challenged transfer have been made "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). "A debt is considered 'antecedent' if it was incurred prior to the transfer." *In re Itzhak*, 674 B.R. 460, 472 (Bankr. S.D.N.Y. 2025) (citing *In re ContinuityX, Inc*., 569 B.R. 29, 34 (Bankr. S.D.N.Y. 2017)). The Trustee pleads the preference claims subject to proof that the challenged transfers were made on account of antecedent debts. (*See* Compl. ¶¶ 92, 97). Thus, if the evidence ultimately shows that some of the challenged transfers were not payments on preexisting obligations, then that evidence could bear directly on an element of the Trustee's preference claim.

Finally, Mr. Lim's asserted operational purpose of the transfers could bear on the Trustee's unauthorized postpetition transfer claim under section 549. Section 549 permits avoidance of a postpetition transfer of estate property that "is not authorized under [the Bankruptcy Code] or by the court." 11 U.S.C. § 549(a)(2)(B). The absence of a specific court order does not necessarily establish lack of authorization, because section 363(c)(1) permits a debtor in possession to "enter

into transactions … in the ordinary course of business, without notice or a hearing," and to use estate property in the ordinary course on the same basis. *In re Crystal Apparel, Inc*., 207 B.R. 406, 409 (S.D.N.Y. 1997) (quoting 11 U.S.C. § 363(c)(1)); *see also Santa Rosa Mall, LLC v. Sears Holdings Corp*., No. 20-CV-03923 (PMH), 2021 WL 4429507, at *3 (S.D.N.Y. Sept. 27, 2021) ("[A] debtor may enter into transactions involving property of the estate in the ordinary course of the debtor's business without first seeking court approval."). Here, the Trustee alleges that none of the challenged postpetition transfers was authorized either by Court order or by the Bankruptcy Code. (*See* Compl. ¶¶ 100-104). If, however, the Lims establish that particular postpetition transfers were ordinary-course transactions undertaken in furtherance of the Debtor's ongoing business operations, that showing could bear directly on whether those transfers were authorized under section 363(c)(1) and thus fall outside section 549(a).

The Court emphasizes the limited nature of this determination. The Lims have not established that the Debtor actually received reasonably equivalent value, that any particular transfer was authorized, or that they will ultimately prevail on any defense. But they need not do so at this stage. The key question here is whether the evidence "justif[ies] further briefing and consideration," not whether the defense is likely to succeed. *Davis*, 713 F.2d at 916. Given the liberal standard governing Rule 55(c), the Court finds that the Lims have presented a sufficiently concrete factual theory to satisfy the meritorious defense factor. *See Alizada*, 2024 WL 3676584, at *3 (quoting *Enron*, 10 F.3d at 96).

Considering all three factors together, the Court finds that good cause exists to set aside the Lims' defaults. Their defaults were not willful, the Trustee has identified no concrete prejudice that would result from vacatur, and the Lims have presented a potentially meritorious defense. The

Court therefore grants the Lims' Motion to Vacate under Rule 55(c) and sets aside the entries of default at Docket Numbers 19 and 20.

**B. 405 West Bakery's Motion to Vacate the Default Judgment**

The Court next considers 405 West Bakery's Motion to Vacate under Rule 60. Although the factual assertions supporting 405 West Bakery's Motion substantially overlap with those supporting the Lims' Motion, the Court analyzes them separately because a final Default Judgment was entered against 405 West Bakery, but not against the Lims. Therefore, the more stringent Rule 60(b) standard applies. Unlike the Lims, 405 West Bakery did not file an answer to the Trustee's Complaint before the Court entered the Default Judgment.

**1. Timeliness Under Rule 60(c)(1)**

The Court finds that, under the circumstances presented here, 405 West Bakery filed its Motion within a reasonable time. What constitutes a "reasonable time" depends on the particular facts of each case, including the reason for the delay and any prejudice to the opposing party. *See Gouldbourne*, 2000 WL 546762, at *1.

Here, the record shows that 405 West Bakery has furnished a sufficient explanation for its delay. The Complaint alleges that the Lims owned 405 West Bakery and that Mr. Lim incorporated and served as its president. (*See* Compl. ¶¶ 16-17; Dkt. No. 61, Lim Decl. ¶ 1). Mr. Lim represents that his wife's dementia and the responsibilities associated with her care diverted his attention from 405 West Bakery's business matters, and that the attorney he initially sought to retain was unavailable due to health problems. (Dkt. No. 61, Lim Decl. ¶¶ 6-9).

To be sure, the Court does not treat the Lims' *pro se* answer as an answer on behalf of 405 West Bakery. "[A] corporation may appear in the federal courts only through licensed counsel." *Amity Digital, LLC v. Helix Digital Inc.*, No. 23-CV-11044-LTS-OTW, 2026 WL 1759029, at *3

(S.D.N.Y. June 18, 2026) (quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993)). Nonetheless, the Lims' answer and subsequent conduct remain relevant to whether 405 West Bakery's failure to respond reflected a deliberate decision to default. *See Enron*, 10 F.3d at 98. Courts assessing willfulness consider whether a defaulting party took prompt steps demonstrating an intent to defend once confronted with the consequences of its default. *See, e.g.*, *Clark v. New York City Hous. Auth.*, No. 20-CV-251-PAE-GWG, 2021 WL 2368132, at *2 (S.D.N.Y. June 10, 2021); *Durso v. Modern Food Center, Inc.*, No. 17-CV-7324-LAK-GWG, 2019 WL 2150424, at *5 (S.D.N.Y. May 17, 2019).

The Lims filed an answer one day after their individual defaults were entered, before the Trustee sought a default judgment against 405 West Bakery. (*See* Response, Dkt. No. 67, ¶¶ 7-9). Although that filing cannot legally be attributed to 405 West Bakery, it tends to show that Mr. Lim—as 405 West Bakery's chief executive officer—did not simply abandon the litigation once the defaults were entered. Because 405 West Bakery could not proceed *pro se*, the corporation could not respond in the same manner as the Lims and instead was required to obtain licensed counsel. *See Rowland*, 506 U.S. at 202. While that circumstance does not excuse the corporation's failure to secure counsel sooner, it weakens the Trustee's argument that 405 West Bakery's continued default necessarily reflected a "deliberate" or "strategic choice" to default. S*ee American Alliance*, 92 F.3d at 60-61 (distinguishing negligent conduct from a strategic decision to default and explaining that even gross negligence does not necessarily establish willfulness).

The Trustee also expressly acknowledges that vacating the Default Judgment would not cause significant prejudice apart from the costs and delays associated with the Motion. (*See* Response, Dkt. No. 67, ¶ 29). The Trustee identifies no intervening loss of evidence, unavailable

witness, or other circumstance that arose during the approximately four months between entry of judgment and the filing of the Motion.

The Court recognizes that an approximately four-month delay between entry of the Default Judgment and the filing of the Motion is not insignificant. Nevertheless, Rule 60(c)(1) requires that the Motion be filed within "a reasonable time," not at the earliest possible moment. *See* Fed. R. Civ. P. 60(c)(1). Considering the totality of the circumstances—including the personal circumstances described by Mr. Lim, the corporation's need to obtain counsel, Mr. Lim's demonstrated intent to contest the litigation, the relatively limited period following entry of judgment, and the absence of any identified intervening prejudice—the Court finds that 405 West Bakery's Motion was filed within a reasonable time under Rule 60(c)(1).

**2. Mistake, Inadvertence, or Excusable Neglect Under Rule 60(b)(1)**

Having concluded that the Motion was timely, the Court next considers whether 405 West Bakery has established mistake, inadvertence, or excusable neglect under Rule 60(b)(1). In the default judgment context, the Court considers the same three principal factors relevant under Rule 55(c)—willfulness, meritorious defense, and prejudice—but applies them more rigorously because a final judgment has been entered. *See New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005); *see also Enron*, 10 F.3d at 96.

First, with respect to willfulness, the Court finds that this factor presents a close question but, on balance, favors relief. The Trustee observes that Mr. Lim's November 2025 answer demonstrates that, by that point, he understood that the Complaint required a response. (*See* Response, Dkt. No. 67, ¶¶ 18-22). Nevertheless, 405 West Bakery did not answer, did not oppose the Trustee's motion for default judgment, and did not seek relief before judgment was entered. Those circumstances reflect a serious failure to attend to the litigation.

Those failures, however, do not compel a finding of willfulness. Willfulness requires more than negligence; the relevant inquiry is whether the default resulted from deliberate, egregious, or bad-faith conduct. *See Green*, 420 F.3d at 108; *see also American Alliance*, 92 F.3d at 61. As discussed above, Mr. Lim represents that Mrs. Lim was suffering from dementia, that his responsibilities in caring for her diverted his attention from business matters, and that the attorney he sought to retain was initially unavailable because of health problems. Mr. Lim expressly states that "[t]he delay was not deliberate and was inadvertent." (Dkt. No. 61, Lim Decl. ¶¶ 6-10). Moreover, unlike the Lims individually, 405 West Bakery could not appear *pro se* and was required to obtain counsel before responding to the Complaint. *See Rowland*, 506 U.S. at 202. Thus, although Mr. Lim's filing of an individual answer demonstrates that he understood the need to respond, it does not establish that 405 West Bakery's continued failure to answer was a deliberate or strategic choice. *See American Alliance*, 92 F.3d at 60-61. On the present record, the Court finds that the corporation's conduct, while potentially negligent, does not rise to the level of willfulness.

Second, the meritorious defense factor likewise favors relief. Mr. Lim states under penalty of perjury that the challenged funds were federal loan proceeds obtained "to support the various companies and their business operations." (Dkt. No. 61, Lim Decl. ¶ 12). The Trustee's Complaint itself acknowledges that the Debtor received substantial SBA and EIDL financing. (*See* Compl. ¶¶ 64-65). It also predicates its fraudulent transfer claims, in part, on allegations that the challenged transfers did not benefit the Debtor and that the Debtor received no reasonably equivalent value in exchange. (*See id*. ¶¶ 74, 80-82).

The Trustee is correct that loan proceeds do not cease to constitute property of the Debtor merely because they originated from federal financing. But that proposition does not fully dispose

of 405 West Bakery's asserted defense. For the same reasons articulated above, if 405 West Bakery proves that the challenged transfers formed part of an operational arrangement that conferred indirect economic value upon the Debtor, that showing could undermine, at a minimum, the Trustee's constructive fraudulent transfer theory. (*See supra* Analysis, Section A.3). *See Rubin*, 661 F.2d at 991-92. The asserted operational purpose may also bear on the Trustee's allegations of actual fraudulent intent and on whether particular transactions satisfy the elements of the Trustee's alternative preference and unauthorized postpetition transfer theories.

At this juncture, the Court need not determine whether those defenses ultimately will prevail. 405 West Bakery must identify facts that, if established, would constitute a legally sufficient defense for purposes of Rule 60(b). *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004); *see also Osorio-Silva v. Quintessence Alpacas, Int'l*, No. 04-CV-0252-CM-MDF, 2006 WL 8461803, at *7 (S.D.N.Y. Mar. 3, 2006) ("In order to make a sufficient showing of a meritorious defense ... the defendant need not establish his defense conclusively ... but he must present evidence of facts that, if proven at trial, would constitute a complete defense."). Mr. Lim's sworn declaration, considered together with the allegations contained in the Complaint, satisfies that requirement. The Court therefore finds that 405 West Bakery has presented a potentially meritorious defense.

Finally, the prejudice factor favors relief. The Trustee expressly acknowledges that he "would not suffer significant prejudice," apart from the costs and delays associated with responding to the Motion. (*See* Response, Dkt. No. 67, ¶ 29). The Trustee identifies no loss of evidence, unavailable witness, increased difficulty in discovery, or other concrete impairment to his ability to prosecute the claims against 405 West Bakery. *See Davis*, 713 F.2d at 916 (explaining that delay must result in "the loss of evidence, create increased difficulties of discovery, or provide

greater opportunity for fraud and collusion"). The ordinary costs and delays associated with litigating a case on the merits do not, standing alone, constitute the type of prejudice sufficient to weigh against vacatur. *See Moore*, 2012 WL 4815529, at *1 (explaining that "[t]he cost, burden and pressure associated with litigation" do not establish prejudice merely because a plaintiff must prove its case on the merits).

Considering these circumstances together, and mindful that the Rule 60(b) standard is more demanding than the good cause standard governing an entry of default, the Court concludes that 405 West Bakery has established mistake, inadvertence, or excusable neglect sufficient to warrant relief under Rule 60(b)(1). Although 405 West Bakery's failure to respond was substantial and its conduct was far from diligent, the present record does not establish a willful default; 405 West Bakery has presented a potentially meritorious defense; and the Trustee acknowledges that vacatur would not cause significant prejudice. The Court therefore finds that the balance of factors favors vacating the Default Judgment.

## V. **CONCLUSION**

For the foregoing reasons, the Court concludes that good cause exists under Rule 55(c) to set aside the entries of default against Mr. Lim and Mrs. Lim, and that 405 West Bakery has established mistake, inadvertence, or excusable neglect sufficient to warrant relief from the Default Judgment under Rule 60(b)(1). Therefore, the Lims' Motion to Vacate (Dkt. No. 62) and 405 West Bakery's Motion to Vacate (Dkt. No. 61) are **GRANTED**.

Accordingly, it is hereby ordered that:

1. The Clerk of Court's November 25, 2025 entries of default against Mr. Lim and Mrs. Lim at Docket Numbers 19 and 20 are **VACATED**.

2. The Clerk of Court's November 25, 2025 entry of default against 405 West Bakery at Docket Number 21 is **VACATED**.

3. The Court's February 11, 2026 Order Granting Default Judgments (Dkt. No. 48) is **VACATED** solely to the extent it grants relief against 405 West Bakery.

4. The February 18, 2026 Default Judgment (Dkt. No. 49) is **VACATED** solely to the extent that it enters judgment against 405 West Bakery.

5. The relief previously entered against Katsu-Hama and Gio Estrada remains unaffected by this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

Dated: October 5, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE